1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

|  |  |
|---|---|
| **SASCO, a California Corporation,** <br><br> **Plaintiff,** <br><br> **v.** <br><br> **WEBER ELECTRIC MANUFACTURING COMPANY, a Michigan Corporation,** <br><br> **Defendant.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**Case No.: SACV 13-0022-CJC(JPRx)**

**ORDER DENYING DEFENDANT'S MOTION FOR AN EXCEPTIONAL CASE DETERMINATION AND ATTORNEYS' FEES [80]**

**I.  INTRODUCTION**

        Plaintiff SASCO brought this patent infringement action against Defendant Weber Electric Manufacturing Company ("WEMCO").  Before the Court is WEMCO's motion

for an exceptional case determination and for attorneys' fees.  (Dkt. 80.)  For the following reasons, the motion is DENIED.[1]

## II.  BACKGROUND

SASCO is an electrical contracting services provider who owns U.S. Patent No. 6,435,450 ("the '450 Patent").  The '450 Patent, which is entitled "Multi-Compartment Paralleling Reel Having Independent Compartments," claims an apparatus and method for reeling different sets of wire from a multi-compartment device (the "Multi-Reel"). (Dkt. 30-1 ["Patent".)  As the Patent explains, the Multi-Reel is composed of independent compartments, each aligned on a central shaft and capable of holding a reel of wire.  (*Id.* at 1:66–2:20.)  Because the compartments are not attached to one another, they can rotate independently, thereby allowing the operator of the Multi-Reel to unspool wires having different diameter sizes in unison.  (*Id.*)  The Multi-Reel also discloses a reel-securing bar, which can be inserted through each of the independent compartments, thereby causing them to rotate in unison.  (*Id.*)  The device is meant to increase efficiency in contracting jobs by allowing different-sized wires to be unreeled at the same rate of speed.  (*Id.* at 2:39–41.)

SASCO believed that two of WEMCO's products—the MCR-PTS-2 and MCR-PTS-3 payout/transport stands (the "Accused Products")—infringed on the '450 Patent. It filed a complaint against WEMCO for patent infringement in this Court in January 2013, and an amended complaint in April 2013.  (Dkt. 1; Dkt. 15.)  Shortly after SASCO served WEMCO with its original complaint, WEMCO began research into the prior art to determine whether or not the '450 Patent was anticipated by a prior patent.  That research

---

[1]  Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for January 4, 2016 at 1:30 p.m. is hereby vacated and off calendar.

revealed U.S. Patent No. 4,741,493 ("the '493 Patent"). The '493 Patent is a design patent for a locking system for spools holding display jewelry chains. (Dkt. 30-5 ["the '493 Patent"].) It provides for a mechanism that can lock individual spools together so as to prevent the chains held on them from being unspooled. (*See* Dkt. 38-1 ¶ 4.) Believing that the '493 Patent anticipated the '450 Patent, WEMCO moved for summary judgment of invalidity in August 2013. The Court denied WEMCO's motion, explaining that WEMCO had "fail[ed] to show by clear and convincing evidence" that the '493 Patent contained every limitation of the '450 Patent, and that SASCO had "present[ed] evidence of structural differences between the two devices that at the very least create[d] a triable issue as to whether the jewelry display in the '493 Patent [anticipated] the '450 Patent." (Dkt. 45 at 13.)

Litigation proceeded. In July 2014, after the parties had engaged in significant discovery and additional motion practice, the Patent and Trademark Office ("PTO") granted a request for reexamination of the '450 Patent. The parties filed a stipulation to stay the case pending reexamination, and the Court entered a stay on July 16.

On December 17, 2014, the PTO issued a Final Patent Office Action rejecting Claims 1-11 and 13-15 of the '450 Patent (based on anticipation by the '493 Patent) and confirming the patentability of Claim 12 of the '450 Patent. Since the PTO's determination meant that SASCO could no longer plausibly allege infringement against WEMCO, the parties stipulated to dismiss the case with prejudice, and SASCO covenanted not to sue WEMCO under the '450 Patent. (Dkt. 78.) WEMCO subsequently filed its motion for attorneys' fees.

//

//

//

**III.  LEGAL STANDARD**

Congress has provided, in 35 U.S.C. § 285, that in patent infringement disputes "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  "As the statutory language suggests, the award of attorneys' fees is discretionary, and a district court may decide not to award fees even in an exceptional case." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165 (N.D. Cal. 2015) (citing *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) ("The decision whether or not to award fees is still committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees.").

The Supreme Court has recently considered the scope of § 285.  In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), it rejected the Federal Circuit's rule that a case was only "exceptional" under the meaning of § 285 "when there has been some material inappropriate conduct related to the matter in litigation" or when "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless," *see Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005).  Noting that this formulation was "overly rigid," the Supreme Court instead held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 134 S. Ct. at 1756.  The Court also confirmed that "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Id.*  In that exercise, courts may consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

*Octane Fitness* was handed down less than two years ago, and lower courts are still coalescing around a uniform approach to motions for an exceptional case determination under § 285.  The Federal Circuit has, consistent with *Octane Fitness*, undertaken a two-pronged approach that considers the substantive strength—not ultimate success—of a party's litigation position, and whether a party litigated a case in an unreasonable manner. *See*, *e.g.*, *SFA Systems, LLC v. Newegg Inc.*, 793 F.3d 1344, 1347–1352 (Fed. Cir. 2015). The Federal Circuit noted that although courts ultimately undertake a "totality of the circumstances" analysis, it is useful to "parse" a party's arguments by categorizing them into either the "substantive strength" bucket or the "litigation conduct" bucket.  *Id.*

## IV.  ANALYSIS

WEMCO essentially makes four arguments as to why this case qualifies as "exceptional."  First, it argues, SASCO should have realized that the '493 Patent anticipated the '450 Patent and called off the lawsuit when WEMCO alerted it to the '493 Patent.  Second, SASCO's claims were barred by evidence of "on-sale invalidity"—*i.e.*, the Multi-Reel was unpatentable because it had already been sold more than one year before the filing date of the patent application.  Both of these arguments go to the substantive strength of SASCO's litigation position.

Third, WEMCO argues that SASCO engaged in bad faith litigation conduct, including instructing deponents not to respond to questions for which WEMCO believes there was no basis for a non-response, and editing deposition transcripts before submitting them to the Court.  Finally, WEMCO claims that SASCO has engaged in inappropriate litigation conduct in unrelated, non-patent cases, and that the Court should deem this case exceptional in order to deter further bad faith litigation conduct by SASCO.  Both of these arguments go to the reasonableness of SASCO's litigation conduct.

**A.  Substantive Strength**

**1.  The '493 Patent**

As explained above, WEMCO successfully persuaded the PTO examiner that the '493 Patent anticipated the '450 Patent, and that most of the '450 Patent's claims were therefore invalid.  WEMCO argues that SASCO's litigation position on this issue was so weak that a fee award is merited.  The Court disagrees.  As an initial matter, WEMCO *lost* its summary judgment motion on whether the '493 Patent anticipated the '450 Patent, raising significant doubt as to whether SASCO's litigation position was so weak as to merit an exceptional case determination.  "In the pre-*Octane Fitness* patent law jurisprudence, 'a lawsuit which survives a motion for summary judgment is not objectively baseless'" so as to justify an exceptional case finding under § 285.  *Apple, Inc. v. Samsung Elec. Co., Ltd.*, Case No. 11-CV-01846-LHK, 2014 WL 4145499, at *9 (N.D. Cal. Aug. 20, 2014) (citing *Synthes USA, LLC v. Spinal Kinetics, Inc.*, No. 09-cv-01201 RMW, 2012 WL 4483158, at *13 (N.D. Cal. Sept. 27, 2012), *aff'd*, 734 F.3d 1332, 1345 (Fed. Cir. 2013)).  And even post-*Octane Fitness*, a denial of a defendant's summary judgment motion bears significant weight in the determination whether a case is exceptional.  *See Apple,* 2014 WL 4145499, at *9 (noting that the fact that a claim survived summary judgment "strongly suggests that [a case] is not[] 'exceptional'" under § 285); *see also Angioscore, Inc. v. Trireme Medical, Inc.*, Case No. 12-cv-03393-YGR, 2015 WL 8293455, at *2 (N.D. Cal. Dec. 9, 2015) (the fact that plaintiff's claims survived summary judgment "evidenced" that they were not "exceptionally weak").

Indeed, SASCO raised a number of good faith arguments before this Court as to why the '493 Patent did not anticipate the '450 Patent.  It pointed out that the "locking rod" at issue in the '493 Patent actually locks the compartments together to prevent them from rotating at all, whereas the '450 Patent's "reel-securing bar" ensures that the

compartments in the Multi-Reel can all rotate *together, in unison*—that is, SASCO points out, the whole point of the reel-securing bar. Additionally, SASCO argued that the '493 Patent discloses a jewelry chain display case that cannot be said to relate in any meaningful way to the electrical wiring application of the Multi-Reel. The device described in the '493 Patent is much smaller than the Multi-Reel, and SASCO pointed out that the dimensions of heavy-duty electrical wire would in fact preclude a device like the one in the '493 Patent from being used to spool that wire—the spools are simply too small. Finally, SASCO specifically argued that the '450 Patent contains the limitation "different sets of wire," which does not appear in the '493 Patent.

To be sure, the PTO ended up not buying any of these arguments when it found that most of the '450 Patent's claims were anticipated by the '493 Patent. But "the Supreme Court made clear that it is the substantive *strength* of the party's litigating position that is relevant to an exceptional case determination, not the *correctness* or eventual success of that position." *SFA Systems*, 793 F.3d at 1348 (emphasis in original). Although SASCO did not ultimately succeed in persuading the PTO examiner that its position was correct, it is quite clear that that position was not an "exceptionally meritless claim[]," *Octane Fitness*, 134 S. Ct. at 1757. As a result, SASCO's litigation position with regard to the '493 Patent is not grounds for an exceptional case determination.

### 2. On-Sale Bar

WEMCO's other argument as to the substantive strength of SASCO's position concerns the on-sale bar. A patent is invalid under 35 U.S.C. §102(b) if the patented invention was "(1) the subject of a commercial offer for sale before the critical date (of one year prior to the filing of the patent application); and (2) ready for patenting before the critical date." *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 66–67 (1998). WEMCO argues that deposition testimony from a Mr. Manthey demonstrates that the Multi-Reel

was on sale more than one year before SASCO filed its patent application. But in fact, the deposition testimony WEMCO references is deliberately equivocal: when presented with alleged invoices, Mr. Manthey repeatedly testified that he didn't know or remember when particular reels were sold, and that he did not know if particular reels he was shown were sold before a particular date or if they were even the reels that SASCO ultimately patented. (*See* Dkt. 87-1 Exh. 9 at 97–101.) WEMCO attempts to stretch this scant deposition testimony to argue that SASCO knew its claims were barred by the on-sale bar before it even filed its patent application. This argument is without merit. Application of the on-sale bar must be proved by "clear and convincing evidence." *Abbott Laboratories v. Geneva Pharmaceuticals, Inc.*, 182 F. 3d 1315, 1318 (Fed. Cir. 1999). WEMCO's evidence does not meet this standard, much less show that SASCO's arguments concerning the on-sale bar were so weak that the Court should deem this case "exceptional" under § 285.

## B.  Reasonableness of SASCO's Litigation Conduct

### 1.  Specific Examples of Bad Faith Conduct

Next, WEMCO argues that SASCO engaged in bad faith litigation conduct. It offers two examples. The first is that an attorney for SASCO repeatedly instructed a deponent not to answer questions from WEMCO about whether a multi-compartment reel *without* a reel-securing bar (like the one specified in the '450 Patent) would infringe the '450 Patent. SASCO objected to the questions on the basis that they required a legal conclusion. WEMCO argues that this objection was improper, that the questions were calling for a factual, not legal, conclusion, and the objections were "representative of the bad faith in which SASCO and its counsel have litigated this case." (Dkt. 81 at 14.) SASCO, for its part, points out that it was perfectly clear, in its briefing on summary judgment and in responses to interrogatories, that it was not contending that products

without a reel-securing bar were infringing the '450 Patent.  The Court is not persuaded that SASCO's objections to the deposition questions were improper and in any event, a dispute over a single set of deposition objections is not the sort of thing that justifies a several hundred thousand dollar fee award under § 285.  Both parties alleged discovery violations in this case, and in fact SASCO successfully managed to compel production of certain documents WEMCO refused to even look for.  (*See* Dkt. 62 (granting motion to compel production of ESI material)).  There is no reason to find this case exceptional simply on the basis of SASCO's objections to the deposition questions.

WEMCO's second example concerns changes made to a deposition transcript attached to SASCO's briefing on this motion.  This too is unremarkable and not grounds for an exceptional case determination.  Deponents regularly make changes to their deposition testimony after the fact.  Although WEMCO insists that SASCO did not follow the proper procedures in making changes to the transcript, there is no reason to believe that any failure on SASCO's part materially prejudiced WEMCO in any way.  Even were the Court to disregard the changes, which pertain to the parties' dispute over the application of the on-sale bar, it would not come to a different conclusion as to the strength of SASCO's position on that issue.  Accordingly, the deposition changes are not grounds for an exceptional case determination.

### 2.  Deterrence

Finally, WEMCO asserts that SASCO is a repeat bad-faith actor, pointing to sanctions against SASCO in unrelated cases.  It argues that SASCO need be deterred from future litigation misconduct.  The Court disagrees.  It would be one thing if SASCO were bringing multiple frivolous actions based on the patent at issue in this case.  But instead, WEMCO attempts to aggregate any litigation misconduct SASCO has ever engaged in, in cases of widely varying subject matter, in an effort to have *this particular*

*case* declared exceptional.  This Court refuses to go down that road.  Nothing that SASCo did in those other cases occurred before this Court and this Court has no intention of spending countless hours reviewing and critiquing sanction orders issued by other courts.

## IV.  CONCLUSION

The Court recognizes that since the Supreme Court broadened the standard for fee awards under § 285, prevailing parties in patent actions have little to lose by bringing motions like this one.  Nonetheless, here it appears that WEMCO has simply cobbled together any argument it could possibly think of as to why SASCO's litigation positions were weak or its litigation conduct unsavory.  The Court questions the utility of this exercise.  From the Court's review of the record, SASCO brought a colorable, though ultimately unsuccessful, patent infringement case, and litigated it appropriately and in good faith.  WEMCO has neither shown that SASCO advanced exceptionally weak litigation positions nor that it engaged in unreasonable litigation conduct.  This is not an exceptional case under 35 U.S.C. § 285, and WEMCO's motion is DENIED.

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2015